UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GAIL HARRIS,

    Plaintiff,

v.                                       Case No:  2:17-cv-399-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**OPINION AND ORDER**

This cause comes before the Court on Plaintiff Gail Harris's Complaint filed on July 14, 2017. (Doc. 1). Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for supplemental security income. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.    Social Security Act Eligibility, Procedural History, the ALJ's Decision, and Standard of Review**

    **A.    Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve

months.  42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 416.905.[1]  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity that exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

    **B.**    **Procedural History**

On May 1, 2014, Plaintiff filed an application for supplemental security income with an alleged onset date of February 15, 2014.  (Tr. at 93, 194-202).  The application was denied initially on August 26, 2014, (Tr. at 93), and upon reconsideration on October 6, 2014, (Tr. at 113).  A video hearing was held before Administrative Law Judge ("ALJ") Christopher L. Dillon on May 10, 2016.  (Tr. at 33-56).  The ALJ issued an unfavorable decision on August 2, 2016.  (Tr. at 10-32).  The ALJ found Plaintiff not to be under a disability since May 1, 2014, the date Plaintiff's application was filed.  (Tr. at 26).

On June 9, 2017, the Appeals Council denied Plaintiff's request for review.  (Tr. at 1-6).  Plaintiff filed a Complaint in this Court on July 14, 2017.  (Doc. 1).  Defendant filed an Answer on September 26, 2017.  (Doc. 13).  The parties filed a Joint Memorandum setting forth their positions and arguments on the issues.  (Doc. 22).  The parties consented to proceed before a United States Magistrate Judge for all proceedings.  (*See* Doc. 17).  This case is ripe for review.

---

[1] The Court notes that the Social Security regulations were recently revised.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017).  Unless otherwise specified, the Court refers to the regulations in effect at the time of the Administrative Law Judge's decision.

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[2] An ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the residual functional capacity ("RFC") to perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 1, 2014, the application date. (Tr. at 15). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "status-post gunshot wound to the right lower extremity, degenerative joint and disc diseases, a gastrointestinal disorder, an affective disorder, an anxiety-related disorder, and a psychotic disorder." (*Id.*). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926)). (Tr. at 16).

---

[2] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

Based on the evidence, the ALJ determined that Plaintiff had the RFC to perform work that:

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds; pushing or pulling similar amounts; standing and/or walking for a total of no more than 2 hours per work day; sitting for a total of 6 hours; no climbing of ropes, ladders, or scaffolding; no more than occasional ability to perform all other postural activity; no foot pedal operation; no more than occasional interaction with supervisors and coworkers, but no more than superficial incidental contact with the public, such as sharing common areas like hallways and elevators; and no more than simple, routine tasks without assembly-line production.

(Tr. at 18).

At step four, the ALJ made no finding regarding past relevant work. (Tr. at 24). Specifically, the ALJ noted that it was appropriate to expedite step four of the sequential evaluation. (*Id.*).

At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.*). Specifically, the ALJ asked the VE whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. (Tr. at 25). The VE testified that someone with Plaintiff's age, education, work experience, and RFC would be able to perform the requirements of representative occupations such as:

> 1. Small Parts Assembler, (*Dictionary of Occupational Titles*) (*DOT*) Code 706.684-022, which is light, unskilled work with a specific vocational preparation (SVP) of 2. According to the vocational expert, there are approximately 22,000 such jobs in the national economy.
>
> 2. Electronics Worker (*DOT* Code 726.687-010), which is light, unskilled work with an SVP of 2. According to the vocational expert, there are approximately 10,000 such jobs in the national economy.
>
> 3. Shipping/Receiving Weigher, (*DOT* Code 222.387-074), which is light, unskilled work with an SVP of 2. According to the vocational expert, there are approximately 19,000 jobs in the national economy.

(Tr. at 25).

Pursuant to Social Security Ruling ("SSR") 00-4p, the ALJ determined that the VE's testimony was consistent with the information contained in the *Dictionary of Occupational Titles*. (*Id.*). Based on the VE's testimony, the ALJ found that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (*Id.*). As a result, the ALJ determined that a finding of "not disabled" was appropriate. (*Id.*).

Accordingly, the ALJ concluded that Plaintiff was not under a disability since May 1, 2014, the date Plaintiff's application was filed. (Tr. at 26).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking

into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

Plaintiff raises three issues on appeal:

1. Whether the ALJ's finding, that the opinions of Plaintiff's treating primary care provider Dr. Mirza Gagot-Rivera, M.D., treating psychiatrist Dr. Manuel Gallego, M.D., consulting psychologist Dr. Kenneth Visser, Ph.D., and consulting physician Dr. Vaidy Nathan, M.D., are entitled to little weight, is supported by substantial evidence and consistent with the requirements of 20 C.F.R. § 416.927; SSR 96-2p.

2. Whether the ALJ's assessment of Plaintiff's [RFC] is supported by substantial evidence, as required by 20 C.F.R. § 416.945 and SSR 96-8p.

3. Whether the ALJ identified other jobs available in significant numbers in the national economy that the Plaintiff can perform, as required by 20 C.F.R. § 416.969.

(Doc. 22 at 11, 23, 28). The Court addresses these issues in turn below.

### A. The ALJ's Review of the Medical Opinion Evidence

Plaintiff first argues that the ALJ erred in his evaluation of the medical opinion evidence.

The Social Security regulations define medical opinions as statements from physicians, psychologists, or other acceptable medical sources that reflect judgments about the nature and severity of impairments, including symptoms, diagnosis and prognosis, what a claimant can still do despite impairments, and physical or mental restrictions. 20 C.F.R. § 416.927(a)(2). When evaluating a medical opinion, the ALJ considers various factor, including: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's opinion is with the record as a whole; and (5) the

6

doctor's specialization. *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

An ALJ is required to consider every medical opinion. *Bennett v. Astrue*, No. 308-cv-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)). Additionally, the Eleventh Circuit has stated that an ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Otherwise, the Court has no way to determine whether substantial evidence supports the ALJ's decision, and the Court will not affirm simply because some rationale might have supported the ALJ's conclusion. *See id.* Nonetheless, an incorrect application of the regulations will result in harmless error if a correct application of the regulations would not contradict the ALJ's ultimate findings. *Denomme*, 518 F. App'x at 877-78 (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

The Eleventh Circuit has further held that the opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* Moreover, an "ALJ may reject any medical opinion if the evidence supports a contrary finding." *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 526 (11th Cir. 2015) (quoting *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987)).

As indicated above, Plaintiff argues that the ALJ erred in his review of the medical opinion evidence by finding that the doctors' medical opinions merit little weight, including the

opinions of (1) Dr. Mirza Gagot-Rivera, (2) Dr. Manuel Gallego, (3) Dr. Kenneth Visser, and (4) Dr. Vaidy Nathan. (Doc. 22 at 12-17). After careful review of Plaintiff's arguments, the Court finds that the ALJ erred in his analysis of Dr. Gagot-Rivera's and Dr. Gallego's medical opinions for the reasons set out below.

### 1. Dr. Gagot-Rivera

Plaintiff argues that the ALJ erred by not addressing Dr. Gagot-Rivera's opinion in its entirety. (*See id.* at 12). Initially, Plaintiff argues that the ALJ erred by inferring that Dr. Gagot-Rivera's observation that Plaintiff has primarily performed "field work" meant that Dr. Gagot-Rivera referred only to Plaintiff's inability to return to field work rather than an inability to perform any work. (*Id.* (citing Tr. at 22-23)). Additionally, Plaintiff takes issue with the ALJ's failure "to recognize that Dr. Gagot-Rivera . . . completed a disability form provided by the Florida Department of Revenue, indicating that the Plaintiff is totally and permanently disabled from all employment." (*Id.* (citing Tr. at 487)). Plaintiff contends that the ALJ erred by failing to address the Florida Department of Revenue form or explain why the opinion was not adopted. (*Id.*). Due to these errors, Plaintiff argues that the ALJ's decision is not supported by substantial evidence and that the ALJ did not have good cause for rejecting Dr. Gagot-Rivera's opinion. (*Id.* at 13).

In response, Defendant argues that substantial evidence supports the ALJ's decision. (*Id.* at 17). Defendant contends that the ALJ's decision to grant little weight to Dr. Gagot-Rivera's opinion was "premised on the understanding that Plaintiff could not return to 'field work.'" (*Id.* (citing Tr. at 22-23)). In support, Defendant argues that Dr. Gagot-Rivera noted that Plaintiff previously performed field work, (*id.* (citing Tr. at 23, 659)), then, immediately after, noted that Plaintiff cannot presently work, (*id.* (citing Tr. at 659)). Similarly, Defendant notes that Dr.

8

Gagot-Rivera's April 2016 progress report precludes Plaintiff from specifically performing field work. (*Id.* at 17-18 (citing Tr. at 663)). Therefore, Defendant argues that the ALJ's decision to give Dr. Gagot-Rivera's opinion little weight is supported by substantial evidence of record.

Moreover, Defendant argues that the Florida Department of Revenue's form "was a check box form that Dr. Gagot-Rivera completed in August 2014, well before Dr. Gagot-Rivera's statements in December 2015 and April 2016." (*Id.* at 18 (citing Tr. 487)). Furthermore, Defendant contends that the form was "intended for child support enforcement purposes only" and that Dr. Gagot-Rivera "did not provide any explanation or remarks to support his opinion that Plaintiff was 'totally and permanently disabled' and was 'currently unable to work.'" (*Id.* (quoting Tr. at 487)). Moreover, Defendant notes that checklist-style or conclusory evidence is generally disfavored by the courts. (*Id.* (citing *Phillips*, 357 F.3d at 1241; *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011); *Mason v. Shalala*, 944 F.2d 1058, 1065 (3d Cir. 1993); *Hammersley v. Astrue*, No. 5:08-cv-245-Oc-10GRJ, 2009 WL 3053707, *6 (M.D. Fla. Sept. 18, 2009)). Consequently, Defendant argues that the form "does not leave unsupported the ALJ's rationale for giving Dr. Gagot-Rivera's opinion little weight." (*Id.*).

The Court notes that the ALJ did not address the Department of Revenue form in his decision. As noted above, ALJs are required to consider every medical opinion, *Bennett*, 2009 WL 2868924, at *2 (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)), and state with particularity the weight given to the medical opinions and the reasons therefor, *Winschel*, 631 F.3d at 1179. In this case, because the ALJ failed to consider Dr. Gagot-Rivera's opinion or state with particularity the weight given to it and the reasons therefor, the Court finds that the ALJ erred.

Although the Court finds that the ALJ erred, as noted above, an incorrect application of the regulations will result in harmless error if a correct application of the regulations would not

9

contradict the ALJ's ultimate findings. *Denomme*, 518 F. App'x at 877-78 (citing *Diorio*, 721 F.2d at 728). In this case, the Court is not a factfinder and, thus, does not know what impact the Department of Revenue form might have had on the ALJ's decision. Nonetheless, the form clearly shows that Dr. Gagot-Rivera believed that Plaintiff had significant limitations, including the inability to work, based on her conditions. (*See* Tr. at 487). The ALJ's decision, however, provides no indication that the ALJ considered Dr. Gagot-Rivera's opinion or its possible implications. The Court, therefore, cannot find that the ALJ's failure to consider the Department of Revenue's form was harmless.

As a final matter, the Court notes Defendant's argument that, although the ALJ did not address the Department of Revenue form, the form does not "leave unsupported the ALJ's rationale for giving Dr. Gagot-Rivera's opinion little weight." (Doc. 22 at 18). In doing so, Defendant essentially argues that check-box forms are "weak evidence at best." (*See id.* (quoting *Mason*, 944 F.2d at 1065)). On this point, however, the Eleventh Circuit has held that "a court may not accept . . . counsel's *post hoc* rationalizations for agency actions." *Baker v. Comm'r of Soc. Sec.*, 384 F. App'x 893, 896 (11th Cir. 2010) (citation omitted); *see also Williams v. Comm'r of Soc. Sec.*, No. 6:13-CV-1667-ORL-GJK, 2015 WL 1003852, at *2 n.3 (M.D. Fla. Mar. 6, 2015). Instead, "[i]f an action is to be upheld, it must be upheld on the same bases articulated in the agency's order." *Id.* Here, although Defendant set forth arguments as to why reviewing the form would not have changed the ALJ's decision to grant little weight to Dr. Gagot-Rivera's opinion, the fact remains that the ALJ did not articulate any of these reasons in his decision. As a result, the Court need not accept the Commissioner's *post-hoc* rationalization for the agency's actions. *See id.* Furthermore, as stated above, the Court will not affirm simply

because some rationale might have supported the ALJ's conclusion. *See Denomme*, 518 F. App'x at 877-78. Thus, the Court cannot find that the ALJ's error was harmless on this basis.

In sum, the Court finds that the ALJ committed harmful error by failing to consider Dr. Gagot-Rivera's medical opinion as reflected on the Department of Revenue form or state with particularity the weight given to it and the reasons therefor. The Court, therefore, reverses and remands the decision of the Commissioner on this issue.

### 2. Dr. Manuel Gallego

The Court next addresses Plaintiff's contention that the ALJ erred in his analysis of Dr. Gallego's medical opinion.

Plaintiff takes issue with the ALJ's assessment that Dr. Gallego's medical opinions (1) overstate the nature of Plaintiff's mental health issues and (2) "fall[] completely out of line with objective observations [Dr. Gallego] made on the very same day the opinions were rendered." (Doc. 22 at 13 (citing Tr. at 22)). In pertinent part, Plaintiff contends that the ALJ incorrectly found that Dr. Gallego's observations dated March 4, 2016 were inconsistent. (*Id.* at 13-14 (citing Tr. at 22)). Specifically, Plaintiff points out that certain observations that the ALJ cited as being from Dr. Gallego's notes dated March 4, 2016 were actually from a subsequent visit on March 18, 2016. (*Id.* at 14 (citing Tr. at 665-68)). Plaintiff states "that the ALJ's assertion that the Plaintiff's thought content and process were intact on Mach [sic] 4, 2016, is false" because "[t]he page referenced by the ALJ is actually from a subsequent visit on March 18, 2016, not March 4." (*Id.* (citing Tr. at 665)). Moreover, Plaintiff argues that "even that evaluation shows paranoid delusions and hallucinations, which are symptoms of psychosis." (*Id.* (citing Tr. at 665)).

11

Given the ALJ's mistake and given that the record also shows that Plaintiff was hospitalized for nearly two weeks due to her psychotic symptoms, Plaintiff argues that the ALJ erred in finding that Dr. Gallego's opinions merited little weight because "[t]here is no reasonable support for the ALJ's conclusion that Dr. Gallego's opinion is grossly inconsistent with the objective mental health findings." (*Id.*). Plaintiff argues, therefore, that the ALJ lacked good cause for rejecting Dr. Gallego's opinion. (*Id.*).

In response, Defendant argues that the ALJ's decision was supported by the record. (*Id.* at 19). For instance, Defendant contends that the ALJ's decision is supported by substantial evidence because "Dr. Gallego's examination findings do not support his contemporaneous opinion that Plaintiff had extreme functional limitations." (*Id.* (citing 20 C.F.R. § 416.927(c)(3)). On this point, Defendant argues that the ALJ noted inconsistencies in Dr. Gallego's opinion on March 4, 2016 between Plaintiff's mental health and objective observations regarding "Plaintiff's good grooming, calm and cooperative behavior, focused and normal attention span, intact memory, normal mood and pleasant affect and logical thought processes." (*Id.* (citing Tr. 22, 665)).

Additionally, Defendant argues that the "objective mental health findings in the record support [the ALJ's] decision to give Dr. Gallego's opinion little weight" because Plaintiff's "mental functioning had remained relatively stable since her alleged onset of disability date and that acute disruptions to her overall stability had been isolated and infrequent." (*Id.* at 19-20 (*comparing* Tr. at 473, 496-97, *with* Tr. at 550, 626, 658, 663, 665)). Moreover, Defendant notes that Plaintiff was able to get along with family, friends, and neighbors. (*Id.* at 20 (citing Tr. at 17, 239)). Consequently, Defendant argues that the ALJ's decision was supported by substantial evidence. (*Id.*).

The Court finds Plaintiff's arguments persuasive. Indeed, it appears that the ALJ incorrectly believed that certain treatment notes from Dr. Gallego were rendered on March 4, 2016 when, in fact, they were rendered on March 18, 2016. (*See* Tr. at 22).

Specifically, the ALJ gave little weight to Dr. Gallego's medical opinion, in part, because they "fall[] completely out of line with objective observations he made on the very same day the opinions were rendered." (Tr. at 22). In his decision, the ALJ notes Dr. Gallego's opinion that Plaintiff "suffers extreme limitations across all functional areas due to severe schizoaffective symptoms." (*Id.* (citing Tr. at 665-68)). In making this observation, the ALJ states that Dr. Gallego "rendered those opinions on March 4, 2016." (*Id.*) The ALJ states that this date is "the very same day that [Dr. Gallego] made [] objective observations" noting Plaintiff's "good grooming, cooperative and euthymic attitudes, normal attention span, logical thought processes, etc." (*See id.* (citing Tr. at 665, 667)). In fact, however, the ALJ cited Dr. Gallego's treatment notes from *both* March 4, 2016 and March 18, 2016. (*See* Tr. at 665-68).

The ALJ's error – in attributing treatment notes from March 18, 2016 to March 4, 2016 – is evident in the ALJ's next finding. (*See* Tr. at 22). Specifically, the ALJ found that "[w]hile Dr. Gallego's objective records from March 4, 2016, acknowledge that the claimant struggles with auditory/visual hallucinations; paranoid delusions; and impaired insight and judgment; they nonetheless deem her thought content 'unremarkable' and thought processes 'intact, goal-directed, and logical.'" (*Id.* (citing Tr. at 665)). In reality, however, the treatment notes where Dr. Gallego describes Plaintiff with these improved symptoms are dated March 18, 2016. (*See* Tr. at 665-66). The treatment notes from March 4, 2016 actually show that Dr. Gallego found Plaintiff to be "disheveled" and "impulsive," suffering from "auditory hallucinations," with a

13

thought process of "thought blocking," and thought content consisting of "delusions." (Tr. at 667).

Based on the foregoing, it is clear that the ALJ incorrectly cited Dr. Gallego's treatment notes from March 18, 2016 as though they were dated March 4, 2016. (*See* Tr. at 22). Contrary to the ALJ's express findings, therefore, Dr. Gallego's treatment records cited by the ALJ were *not* rendered on the same day. (*See id*). Moreover, because the ALJ erred in finding that Dr. Gallego's opinions were rendered on the same day, the ALJ's finding – that Dr. Gallego's medical opinions "fall[] completely out of line with objective observations he made on the very same day the opinions were rendered," (*id.*) – is not supported by substantial evidence of record.

Furthermore, the ALJ's error appears to be particularly harmful here because the ALJ's finding that Dr. Gallego's medical opinions "fall[] completely out of line with objective observations he made on the very same day the opinions were rendered" was a primary reason for discounting his medical opinions. (*See* Tr. at 22). Indeed, after noting Dr. Gallego's treatment records – which the ALJ believed were all dated March 4, 2016 – the ALJ found that "[c]onsidering the volume of similar, objective findings in the larger record, the extent to which Dr. Gallego's opinions stray from the support of his own, objective findings renders them almost valueless." (*Id.*). For the reasons discussed above, however, the ALJ erred in coming to this conclusion. Because a primary reason for discounting Dr. Gallego's opinion is not supported by substantial evidence of record, the Court finds that the ALJ did not have good cause for giving little weight to Dr. Gallego's medical opinions.

As a final matter, the Court is not a factfinder and, thus, does not know what impact reevaluating Dr. Gallego's opinions may have. Nevertheless, the distinct possibility exists that, if properly evaluated, the ALJ could assign Dr. Gallego's opinion – as Plaintiff's treating

psychiatrist – significant weight. This finding, in turn, could result in additional limitations in the RFC assessment, which limitations may impact the analysis at step five whether there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. As a result, the Court finds that the ALJ's error is harmful in this instance.

In sum, the Court finds that the ALJ did not have good cause for giving little weight to Dr. Gallego's medical opinion. The Court, therefore, reverses the decision of the Commissioner on this issue.

### 3. Remaining Doctors' Medical Opinion

The Court declines to address Dr. Kenneth Visser's and Dr. Vaidy Nathan's medical opinions until the ALJ reevaluates Dr. Gagot-Rivera's and Dr. Gallego's opinions. Upon remand, however, the ALJ must reevaluate the medical opinion evidence in addition to the entire medical evidence of record. The Court emphasizes here that it is not finding at this time that either Dr. Gagot-Rivera's or Dr. Gallego's opinion must be given greater weight. Similarly, the Court is not finding that any other medical opinion should be given greater weight. Indeed, after reevaluation, the ALJ may once again reach the same conclusions. Nevertheless, for the reasons explained above, the Court cannot affirm the ALJ's decision because it is not supported by substantial evidence of record.

## B. Plaintiff's Remaining Arguments

Plaintiff's remaining arguments focus on a number of issues that cannot be resolved until it is clear to the Court that the ALJ properly considered the entire medical evidence of record, including specifically a re-evaluation of Dr. Gagot-Rivera's and Dr. Gallego's medical opinions. Indeed, the other two issues raised by Plaintiff regarding the RFC and the availability of jobs Plaintiff can perform may be impacted by a re-evaluation of these medical opinions. Moreover,

a re-evaluation of Dr. Gagot-Rivera's and Dr. Gallego's opinions may impact the analysis of other elements of the ALJ's decision. As a result, the Court finds that any ruling on Plaintiff's remaining arguments is premature at this time. Upon remand, the ALJ must reevaluate the entire medical evidence of record in evaluating Plaintiff's case.

**III.    Conclusion**

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is not supported by substantial evidence.

Accordingly, the Court hereby **ORDERS** that:

1) The decision of the Commissioner is **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner (1) to reevaluate the medical opinion evidence and (2) to review the entire medical evidence of record.

2) The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

3) If Plaintiff prevails in this case on remand, Plaintiff must comply with the Order (Doc. 1) entered on November 14, 2012, in Misc. Case No. 6:12-mc-124-Orl-22.

**DONE AND ORDERED** in Fort Myers, Florida on June 28, 2018.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties